IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jacoby D. Fennell, | ) | C/A No.: 1:09-2429-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Officer Charles Williams, Lexington County Jail Staff; Officer NFN Ricard, Lexington County Jail Staff; Sgt Debra Hare, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

At all times relevant to the complaint, Plaintiff was a pretrial detainee incarcerated at the Lexington County Detention Center ("LCDC"). Defendant has alleged violations of his constitutional rights, which are construed as brought pursuant to 42 U.S.C. § 1983. Before the court are: (1) Defendants' Motion for Summary Judgment [Entry #50]; (2) Defendants' Motion to Dismiss for Lack of Prosecution [Entry #58]; and (3) Plaintiff's Motion to Amend the Complaint [Entry #78]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.).

I.  Factual and Procedural Background

   A.  Procedural History

Defendants filed their motion for summary judgment on March 11, 2010. The docket demonstrates this case lingered without any activity by Plaintiff from January 20, 2010 until November 1, 2010, despite two orders having been issued pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising him of the summary judgment procedure and the consequences of failing to respond to motions to dismiss and motions for summary judgment. Specifically, a *Roseboro* Order issued on March 11, 2010, the day after Defendants filed their motion for summary judgment, and the order required Plaintiff to file a response to the motion by April 15, 2010. Plaintiff having not submitted a response to the motion for summary judgment, Defendants filed a motion to dismiss for lack of prosecution on September 13, 2010. The motion to dismiss triggered the Clerk's office to issue a *Roseboro* Order on September 14, 2010 that set the deadline for Plaintiff to respond to Defendants' motion by October 18, 2010. The *Roseboro* Order was incorrectly linked on the docket to Defendants' motion for summary judgment [Entry #50] instead of the intended motion to dismiss [Entry #58]. The Clerk's Office sent a copy of the Notice of Electronic Filing to Plaintiff at his most recent address on Oakland Avenue. Nevertheless, Plaintiff failed to file any timely response.

On November 1, 2010, Plaintiff filed a letter inquiring into the status of his case. In the letter, he claimed to have kept the Clerk's Office up to date of his address change as instructed. However, although Plaintiff did not explicitly state that his address had changed, the address on the envelope of his November 1, 2010 letter reflected a post office box in Lexington rather that the Oakland Avenue address on file with the Clerk's Office. Out of an abundance of caution, the Clerk's Office re-mailed the *Roseboro* Order to the Lexington post office box on November 3, 2010. Again, the *Roseboro* Order was

incorrectly linked on the docket to Defendants' motion for summary judgment [Entry #50], instead of the intended motion to dismiss [Entry #58].

On November 15, 2010, Plaintiff filed a document that the Clerk's Office docketed as a "Response in Opposition to the Motion to Dismiss for Lack of Prosecution." [Entry #68]. In the document, however, Plaintiff writes that this is "not my complete final response in the pleadings but I do have concerns about the fact I a pro-se litigant have properly filed a solid claim and I have provided an extensive paper trail in support of my claim." It is in this letter that Plaintiff requests a copy of "the Defendants' motions in reference to the summary judgment (matters outside the original pleadings)."

Despite the considerable delay, and out of an abundance of caution, on November 23, 2010, the court directed the Clerk to issue another *Roseboro* order that properly linked to the Defendants' Motion to Dismiss for Failure to Prosecute [Entry #58]. The court specifically directed Plaintiff to provide all the facts and arguments as to why this case should not be dismissed and summary judgment should not be rendered in favor of Defendants. Plaintiff responded to the order on December 28, 2010.

B.   Factual Background

Plaintiff filed his original complaint on September 16, 2009, while he was still incarcerated at LCDC. [Entry #1]. Plaintiff alleges that on or about July 18, 2009, Defendant Ricard used excessive force upon him in violation of his constitutional rights. *Id.* Specifically, Plaintiff admits he began verbally and then actively resisting Ricard's attempts to be moved to another cell. Plaintiff alleges Ricard placed him in handcuffs

improperly and injured Plaintiff's wrists when Ricard pulled the handcuffs to move Plaintiff, who refused to move on his own.

Additionally, Plaintiff alleges that on July 20, 2009, Defendant Williams failed to protect him from an assault by another inmate. *Id.* Specifically, Plaintiff alleges he told Williams he "had problems and need[ed] to [have] rec[reation] alone." Compl. at 4 [Entry #1]. Williams placed Plaintiff and another inmate in recreation together, as Williams had no specific knowledge of issues between Plaintiff and the inmate. The inmate attacked Plaintiff when Williams was out of sight. *Id.* Plaintiff alleges that Williams' actions were intentional.

Plaintiff subsequently filed an amended complaint on September 30, 2009. [Entry #11]. In his amended complaint, Plaintiff added defendant Hare as a party and made additional allegations against Williams. Specifically, Plaintiff alleges he was covering his cell door window with paper to prevent officers from seeing into the cell when Williams entered the cell to remove the paper. Am. Compl. at 1 [Entry #11] According to Defendants, and undisputed by Plaintiff, he refused to comply with the officers' commands and hindered their efforts. As the officers were attempting to restrain Plaintiff, he grabbed Williams' microphone and issued an "emergency" call over the detention center radio system. *Id.* This call was heard by other officers, including Hare, who shortly thereafter arrived at Plaintiff's cell.

Defendants contend, and Plaintiff does not dispute, that Plaintiff was actively resisting the officers' attempts to restrain him and he ignored several directives.

4

According to Defendants, Plaintiff was warned that if he did not calm down and stop resisting he would be tased. Hare Aff., ¶ 20 [Entry #50-3]. When Plaintiff continued to resist, Sergeant Hare used a technique called a "drive" stun to deploy an electronic shock from her taser to Plaintiff. *Id.* at ¶ 22. According to Defendants, a "drive" stun is considered less invasive than the normal deployment of the taser, because the prongs of the taser do not break the skin of the subject. *Id.* Plaintiff alleges that Hare then placed both feet on his torso to restrain him.

II.     Discussion

    A.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." *Id.* The

opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be no genuine issue of material fact.

B. Excessive Force

A Fourteenth Amendment[1] claim of excessive force exists where the defendant "inflicted unnecessary and wanton pain and suffering" on an arrestee or pretrial detainee, and where the force was applied "maliciously and sadistically for the very purpose of causing harm." *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998). In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an

---

[1] As a pretrial detainee, Plaintiff's claims of excessive force are analyzed under the Fourteenth Amendment.

excessive force claim is not nearly as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm . . . contemporary standards of decency are always violated . . . whether or not significant injury is evidence." *Wilkins*, 130 S.Ct. at 1179 (internal citations and quotations omitted).

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

After applying the *Whitley* factors to the facts at hand, the record is insufficient to establish a claim for excessive force. With regard to the incident involving Ricard, his use of force was necessary, as the record demonstrates Plaintiff failed to follow direct orders and admits that he was actively resisting. The amount of force appears appropriate as Plaintiff was placed in handcuffs for the safety of all those in the vicinity and moved to a cell where he could be confined. Plaintiff has failed to present any evidence beyond his own allegations, such as medical records, demonstrating that he was injured in any way.

Additionally, Plaintiff's admitted failure to respond to Ricard's direct orders

7

created a reasonable perception by Ricard that Plaintiff posed a threat to the safety of the staff and institution.

Plaintiff has also failed to demonstrate Defendants used excessive force with regard to the tasing incident. Defendants have alleged, and Plaintiff has not denied, his repeated failure to follow directives from Williams and other officers. Plaintiff also admits that he grabbed Williams' radio microphone and began calling for other officers. Defendants only used the taser on Plaintiff after his failure to follow several directives and after a warning that a taser would be used if he continued. Thus, Plaintiff has not shown that the amount of force was excessive. Additionally, Plaintiff has failed to provide any evidence of any injuries he suffered as a result of the incident. Finally, Defendants were reasonable in perceiving a threat posed by Plaintiff as he repeatedly refused to follow directives. Therefore, after balancing the *Whitley* factors, and based on the record presented, the undersigned submits that Plaintiff has failed to establish a claim for excessive force and Defendants are entitled to summary judgment on these claims.

C.     Failure to Protect

It is undisputed that Plaintiff was assaulted by a fellow inmate on July 20, 2009. Although the conditions of confinement of pretrial detainees are evaluated under the Fourteenth Amendment, rather than the Eighth Amendment, which protects the rights of convicts, the analysis of a detainee's claim mirrors that of a convict's claim. Thus, federal courts have relied on decisions construing the Eighth Amendment in evaluating pretrial detainees' claims under the Fourteenth Amendment. *Craig v. Eberly*, 164 F.3d 490, 495

8

(10th Cir.1998); *see also Chisolm v. Cannon*, No. 402-3473, 2006 WL 361375 at *3 (D.S.C. Feb.15, 2006).

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Not every injury suffered by one inmate at the hands of other inmates constitutes liability for the prison officials responsible for the victim's safety. *Id.* at 835. A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate, however, does violate the Eighth Amendment. *Id.* at 828. "[A] prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. The test is not whether an official knew or should have known of a substantial risk of serious harm, but whether he did, in fact, know of it and consciously disregard that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a possibility of harm exists, and he must also draw the inference." *Id.* at 837. Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff has submitted no evidence that Defendants knew of a specific risk of harm to him and consciously disregarded it. Plaintiff alleges only that he told Williams that he "had problems and need[ed] to be [in] rec[reation] alone." Plaintiff's allegations are insufficient to show that Williams or another defendant knew of a substantial risk of harm to Plaintiff. Therefore, the bad acts of the assailant inmate cannot be

9

constitutionally imputed to any of Defendants to support Plaintiff's failure-to-protect claim on the facts of this case.

### D. Plaintiff's Motion to Amend the Complaint

Plaintiff moved to amend the complaint on January 4, 2010 to add claims for incidents that occurred well over a year after his original complaint was filed. Plaintiff does not disclose the specific subject matter of his requested amendments, save for disclosing the issue is against the same facility. It appears from the inmate request forms Plaintiff has attached to his motion that he seeks to litigate LCDC's failure to provide him with certain documents he requested.

"[L]eave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "A motion to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (internal quotation marks omitted); *see also Gordon v. Leeke*, 574 F.2d 1147, 1152-53 (4th Cir. 1978) (a pro se litigant is entitled to the opportunity to amend his pleadings if he has alleged a potentially meritorious cause of action).

Construing his motion to amend the complaint liberally, Plaintiff has failed to state a constitutional violation with his incomplete allegations regarding LCDC's refusal to provide him certain documentation. Therefore, the amendment requested would be futile. In addition, an amendment at this time would prejudice Defendants, who moved for summary judgment on all Plaintiff's claims over eight months ago, to which Plaintiff

failed to respond until December 28, 2010. Because Plaintiff's requested amendment to the complaint would be both futile and prejudicial to Defendants, the undersigned recommends Plaintiff's Motion to Amend [Entry #78] be denied.

III.   Conclusion

Based on the foregoing reasons, the undersigned recommends Defendants' Motion for Summary Judgment [Entry #50] be granted and Plaintiff's Motion to Amend [Entry #78] be denied.  If the district judge accepts this recommendation, Defendants' Motion to Dismiss for Failure to Prosecute [Entry #58] will be rendered moot.

IT IS SO RECOMMENDED.

January 5, 2011                                                      Shiva V. Hodges
Florence, South Carolina                                      United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**